Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Blanche M. Manning | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 95 CR 511−2 | **DATE** | April 24, 2002 |
| **CASE TITLE** | United States v. Savulescu | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter minute order and memorandum and order nunc pro tunc to 3/19/02. For the reasons set forth in the attached Memorandum and Order, the Court GRANTS Defendant Virgil Savulescu's Motion for a Downward Departure. It is so ordered.

(11) ■ For further detail see order attached to the original minute order.

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | APR 25 2002 date docketed | 164 |
| | Notified counsel by telephone. | U.S. DISTRICT COURT CLERK | | |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | 02 APR 24 PM 12: 16 | | |
| | Copy to judge/magistrate judge. | FILED-ED 10 | date mailed notice | |
| RTS | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | Hon. Blanche M. Manning |
| v. ) | |
| ) | 95 CR 511-2 |
| VIRGIL SAVULESCU ) | |

DOCKETED APR 25 2002

## MEMORANDUM AND ORDER

In connection with his sentencing, Savulescu has moved this Court for a downward departure from the United States Sentencing Guidelines ("the Guidelines"). For the reasons set forth below and in open court on March 1 and 19, 2001, this Court GRANTS Savulescu's motion for a downward departure.

Trial courts are generally required to impose sentences within the range set by the Guidelines. 18 U.S.C. 3553(b). However, the Guidelines permit courts to impose a sentence below the prescribed range if the Court finds that there exists a "mitigating circumstance of a kind, or to a degree, not adequately considered by the Sentencing Commission in formulating the guidelines." U.S.S.G. § 5K2.0, p.s.

Here, Savulescu contends that a departure is warranted based on his: (1) acceptance of responsibility; and (2) extraordinary family circumstances. The Court will address each of these issues in turn.

### I. Acceptance of Responsibility

Savulescu contends that although he went to trial, he is entitled to a downward departure for acceptance of responsibility. While it is correct that going to trial does not necessarily preclude a defendant from receiving a downward departure for acceptance of responsibility, the

16

defendant is not entitled to such a departure if the defendant challenged the factual evidence of guilt at trial. See United States v. Williams, 202 F.3d 959, 962 (7th Cir. 2000); United States v. Bonanno, 146 F.3d 502, 513 (7th Cir. 1998).

Here, after reviewing the pertinent portions of the record, this Court finds that Savulescu contested whether he intended to defraud the victims in this case and whether there was a scheme to defraud. Consequently, this Court finds that Savulescu is not entitled to a downward departure for acceptance of responsibility.

## II.    Extraordinary Family Circumstances

Savulescu also contends that he should receive a downward departure for extraordinary family circumstances because his wife suffers from a debilitating mental illness and he is her sole caretaker and only means of financial support.

The Guidelines provide that "[f]amily ties and responsibilities . . . are not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range." U.S.S.G. § 5H1.6. The Sentencing Commission, however, advised that although "not ordinarily relevant to the determination of whether a sentence should be outside the applicable guideline range, [family circumstances] may be relevant to this determination in exceptional cases." U.S.S.G. Ch. FIVE, Pt. H, Refs & Annos. (citing, § 5K2.0 (Grounds for Departure)). The Seventh Circuit has interpreted the Guidelines to allow for a downward departure based upon a finding that "a defendant's family ties and responsibilities or community ties are so unusual that they may be characterized as extraordinary." United States v. Canoy, 38 F.3d 893, 907 (7th Cir.1994). In making a finding of extraordinary family circumstances, the court must find that "the period of incarceration set by the Guidelines would have an effect on the family or family

2

members beyond the disruption to family and parental relationships that would be present in the usual case." Id. Courts have implemented the extraordinary requirement because disruption to the defendant's life and family is "inherent in the punishment of incarceration." Id.

While not common, the Seventh Circuit and other circuits have departed, or suggested that it is appropriate to depart, where the defendant is charged with a non-violent crime that was ordinary in nature, and the wife, children or other family members are unusually dependent upon the defendant and could face serious mental or physical problems if separated from the defendant. See United States v. Stefonek, 179 F.3d 1030, 1038 (7th Cir. 1999) (reconsideration of departure based on extraordinary family circumstances was warranted where defendant was a single mother of a 12-year old with learning problems; such reconsideration required a determination of whether child would suffer greater harm than normal child, what care would be available for child while defendant was in prison and whether professional assistance was available for the child); United States v. Owens, 145 F.3d 923, 929 (7th Cir. 1998) (affirming downward departure from imprisonment range of 168-210 months and imposing a sentence of 120 months in crack cocaine possession case; the defendant was primary support for wife and children; family would go on public assistance as a result of defendant's incarceration; defendant spent time every day with brother who suffered from Downs Syndrome); United States v. Gauvin, 173 F.3d 798, 806-08 (10th Cir. 1999) (14-month departure in case involving assault on federal officer with a dangerous weapon; the defendant was a father and supporter of his wife and four young children; wife could barely support family, and she was in danger of losing custody of the children); United States v. Galante, 111 F.3d 1029, 1035-36 (2nd Cir. 1997) (approving 13-level downward departure in a drug case to time served plus 24 months home

3

detention for a defendant with two young children ages eight and nine; wife and children were uniquely dependent on the defendant because the wife was unable to speak English and could not support the family); United States v. Sclamo, 997 F.2d 970, 973-74 (1st Cir. 1993) (affirming a downward departure where the defendant had developed a special relationship with the young son of a woman with whom he was living who had psychological and behavioral problems and his psychologist believed there would be a risk of "regression and harm if [the] defendant were incarcerated").[1]

Applying the above principals, courts have found that extraordinary family circumstances were present where the defendant's spouse had an extreme mental or physical debilitating condition and the defendant was the sole caretaker and source of financial support. See United States v. Haversat, 22 F.3d 790, 797 (8th Cir. 1994) (departing downward where defendant's wife suffered from "severe" depression and the defendant was her primary caretaker); United States v. Gaskil, 991 F.2d 82, 85-86 (3d Cir, 1993) (departing downward where the defendant's wife suffered from chronic and severe depression rendering her unable to work, manage her life,

---

[1] Many commentators agree that "family responsibility" departures are consistent with, and not contrary to, the Guidelines. See, e.g., Jack B. Weinstein, The Effect of Sentencing on Women, Men, the Family, and the Community, 5 Colum. J. Gender & L. 169, 178 (1996) ("[i]n certain cases, in view of the necessity of maintaining family stability in environments where father role models are few and far between, downward departures from the Guidelines and a search for alternatives to incarceration are a necessity for male defendants"); Jody L. King, Avoiding Gender Bias in Downward Departures for Family Responsibilities Under the Federal Sentencing Guidelines, 1996 Ann. Surv. Am. L. 273, 301 (1996) (suggesting that increased use of departures for family responsibilities is appropriate, but cautioning that "the decision to grant a downward departure for family responsibilities [should] turn[ ] on the need of the defendant's dependents"); Placido G. Gomez, The Struggle Against Unwarranted Uniformity: The Evolution of Federal Sentencing Departures Based on Extraordinary Family Circumstances--The Case of Low-Level Drug Offenders, 21 J. Marshall L. Rev. 77, 90 (1995) (suggesting the use of alternatives to incarceration in cases involving low-level drug offenders with extraordinary family responsibilities).

or take her medication and the defendant was her sole care giver); United States v. Moy, 1995 WL 311441, at *33 (N.D. Ill. May 18, 1995) (granting downward departure where defendant was the only person who could care for his seriously ill wife).

In Gaskil, 991 F.2d at 85-86, affirming the district court's downward departure where the defendant was solely responsible for the care of his mentally ill spouse, the Third Circuit noted that defendant's spouse had experienced bouts of depression accompanied by suicide attempts and had been hospitalized on numerous occasions and was unable to balance a checkbook and spent approximately sixteen hours in bed. Id. The defendant was his wife's sole care giver, including administering his wife's medication. Id. Additionally, the defendant was the only one available to care for his wife because two of their children would not even talk with their mother, the third child lived far away, and the fourth child, recently divorced, had two children of her own. Id. Consequently, the Third Circuit concluded that the degree of care required for defendant's wife, the lack of close supervision by any other family member, the risk of the wife's well-being, the relatively brief sentence called for by the Guidelines, the lack of any end to be served by imprisonment, other than punishment, and the lack of any threat to the community, all warranted departure and consideration of alternatives to imprisonment such as house confinement or probation. Id. at 86.

Here, as in the above cases, the evidence presented at the sentencing hearing, including Savulescu's testimony and medical documents, show that Savulescu's wife suffers from a severe and chronic bipolar disorder which prevents her from being employed or caring for herself. Savulescu has been his wife's sole caretaker over the years and also ensures that she takes her medication. Savulescu is also the sole source of financial support for his wife and her

medical costs are covered under his insurance policy with his current employer. Furthermore, this Court finds that there are no relatives or friends who would be able to care for Savulescu's wife in the event that he was incarcerated. Consequently, given the above facts, this Court concludes that the instant case presents the extraordinary family circumstances which warrant a downward departure.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant Virgil Savulescu's Motion for a Downward Departure. It is so ordered.

ENTER:

*Blanche M. Manning*
**BLANCHE M. MANNING**
**U.S. DISTRICT COURT JUDGE**

DATE: 3-19-02